897 P.2d 316 (1995)
321 Or. 253
JzKsJ-R. SIMPLOT COMPANY, Appellant,
v.
DEPARTMENT OF REVENUE, STATE OF OREGON, Respondent/Cross-Respondent, and
Lamb-Weston, Inc., Intervenor/Respondent/Cross-Appellant.
UMATILLA COUNTY, Respondent/Cross-Respondent,
v.
DEPARTMENT OF REVENUE, STATE OF OREGON, Respondent/Cross-Respondent, and
Lamb-Weston, Inc., Intervenor/Respondent/Cross-Appellant, and
J.R. Simplot Company, Intervenor/Appellant.
OTC 2885, 2962; SC S40329.
Supreme Court of Oregon, In Banc.
Argued and Submitted September 2, 1994.
Resubmitted December 19, 1994.
Decided June 15, 1995.
*317 Douglas E. Hojem, of Corey, Byler, Rew, Lorenzen & Hojem, Pendleton, argued the cause and filed the briefs for appellant J.R. Simplot Co.
Marilyn J. Harbur, Asst. Atty. Gen., Salem, argued the cause for respondent/cross-respondent Dept. of Revenue. With her on the brief was Theodore R. Kulongoski, Atty. Gen., Salem.
No appearance for respondent/cross-respondent Umatilla County.
Rex E. Armstrong, of Bogle & Gates, Portland, argued the cause for respondent/crossappellant Lamb-Weston, Inc. With him on the briefs was Richard A. Hayden, Portland.
Vernon D. Gleaves and William H. Martin, of Gleaves, Swearingen, Larsen, Potter, Scott & Smith, Eugene, filed a brief on behalf of amici curiae Seneca Sawmill, Inc., and Umpqua Equipment Corp.
DURHAM, Justice.
This case involves the valuation, for ad valorem tax purposes, of a potato processing plant near Hermiston, owned by J.R. Simplot Company (taxpayer), for tax years 1984, 1985, and 1986. The Oregon Tax Court accepted the assessment of the Department of Revenue (department)[1] of $46 million for tax year 1984, and $43 million for each of tax years 1985 and 1986. Taxpayer argues that the Tax Court misinterpreted ORS 308.411, which we quote below and which governs the appraisal and valuation of industrial plants.[2] *318 We conclude that the Tax Court misconstrued ORS 308.411 and that the misinterpretation affected the court's consideration of the appraisals of the property submitted by the parties. We reverse the Tax Court's judgment and remand the case to permit the Tax Court to reconsider the appraisals under a correct statutory interpretation.
The 1981 version of ORS 308.411 governs the valuation of the subject property during the tax years in question. It provided, in part:
"(1) Except as provided in subsections (2) to (9) of this section, an industrial plant shall be valued for ad valorem tax purposes under ORS 308.205, 308.232 and 308.235 at its true cash value utilizing the market data approach (sales of comparable properties), the cost approach (reproduction or replacement cost of the plant) or the income approach (capitalization of income) or by two or more approaches.
"(2) The owner of a plant may elect to have the plant appraised and valued for ad valorem tax purposes excluding the income approach to valuation and excluding taking into consideration functional and economic obsolescence in the utilization of any approach to valuation.
* * * * * *
"(4) If an owner does not make an election under subsection (2) of this section, the owner shall make available to the assessor or department all information requested by the assessor or department needed to determine the true cash value for the plant. At the request of the owner, the information shall be made the confidential records of the office of the assessor or of the department, subject to the provisions of ORS 305.420 and 305.430.
"(5) If an owner makes an election under subsection (2) of this section, the owner shall not in any proceedings involving the assessment of the industrial plant for the assessment year for which the election was made, before the county board of equalization, the Department of Revenue or the Oregon Tax Court, be entitled to introduce evidence relating to the use of the income approach or the allowance of functional or economic obsolescence in any approach to valuation of the plant.
* * * * * *
"(8) Except as provided in this section, no owner of an industrial plant shall be required to make available to the assessor or department, any itemization of income and expense of the industrial plant for use in an income approach to valuation or for determination of functional or economic obsolescence in any approach to valuation in making an appraisal of an industrial plant for purposes of ad valorem taxation. However, information furnished pursuant to subsection (4) of this section is available to the county assessor and to the department for purposes of preparing valuations of other industrial plants, subject to the provisions of ORS 308.413.
"(9) Nothing in this section shall preclude the request for and use of information from an owner of an industrial plant concerning cost items, whether materials, labor or otherwise, for use in the reproduction cost approach to the valuation of the plant. In no event shall the application of subsection (2) of this section operate to value an industrial plant below its true cash value for ad valorem tax purposes under ORS 308.205, 308.232 and 308.235. The election of an owner under subsection (2) of this section to forego the consideration of the income approach or the determination of functional or economic obsolescence in any approach to valuation shall constitute an irrevocable waiver of any subsequent claim that the failure of the assessor or the department to consider the income approach or functional or economic obsolescence resulted in a valuation in excess of the true cash value of the plant under ORS 308.205, 308.232 and 308.235."
Taxpayer made the election authorized by ORS 308.411(2). The parties agree that the election prohibits the use of the income approach to valuation by the department. They disagree, however, about the other consequences of an election in the valuation process. Their disagreement focuses on the final *319 clause of ORS 308.411(2), which provides that an election excludes "taking into consideration functional and economic obsolescence in the utilization of any approach to valuation."
First, the department argued, and the Tax Court agreed, that a consequence of a plant owner's election to withhold income and expense information from the department is that the valuation of the plant will not reflect its "true cash value." The Tax Court said: "[T]he election is to have the property assessed at a value which is something other than true cash value or market value." J.R. Simplot Co. v. Dept. of Rev., 12 OTR 391, 395, 1993 WL 106053 (1993). The Tax Court stated that
"it is misleading to think in terms of true cash value. It is more accurate to think in terms of the `elected' value." Id. at 394.
The court also said:
"The goal is a value higher than market value because the market considers functional and economic obsolescence." Id. at 397 (emphasis added).
On reconsideration, the court further explained that conclusion:
"ORS 308.411(2) raises a fundamental problem. True cash value or market value is the value at which property would change hands in the marketplace between knowledgeable parties. * * * Since the marketplace does take into consideration the income approach and any detectable functional or economic obsolescence, excluding consideration of such matters cannot result in an estimate of market value. An appraiser who followed subsection (2) and yet claimed the result represented true cash value would be in gross violation of established professional standards." Id. at 402 (footnote omitted).
Second, the Tax Court concluded that an election, under ORS 308.411(2), precludes not only the income approach to valuation, but also the sales comparison approach and other appraisal methods that rely on market information because, inherently, the market considers obsolescence. The court stated:
"Although the legislature may not have intended the sales comparison approach to be excluded from use, it apparently did not understand that approach. In using that approach on industrial plants, an appraiser must consider obsolescence in order to determine if the plants are comparable." Id. at 396 (emphasis in original).
Taxpayer argues that the legislature did not intend that an owner's election under ORS 308.411(2) would preclude appraisal methods that rely on market information, simply because the market may inherently reflect consideration of asset obsolescence, or would alter the valuation goal of arriving at the subject property's true cash value. Taxpayer contends that the legislature was concerned only with the potential unfairness of allowing a taxpayer to withhold income and expense information, but later use that same information in an assessment proceeding to argue for a deduction from value based on obsolescence.
We conclude that neither the parties' nor the Tax Court's reading of the statute is accurate. Taxpayer's suggested reading is too narrow, in that the broad exclusion of "consideration" of functional and economic obsolescence in ORS 308.411(2) encompasses more than specific deductions from value based on the taxpayer's withheld income and expense information. On the other hand, the Tax Court's reading of the statute is too broad, in that the statute's text and context do not support the conclusions that an election requires a valuation in excess of the subject plant's true cash value or that an election altogether precludes the use of the sales comparison approach to valuation.
In construing ORS 308.411, we attempt to discern what the legislature intended. PGE v. Bureau of Labor and Industries, 317 Or. 606, 610, 859 P.2d 1143 (1993). We begin with the text and context of the relevant statute, ORS 308.411(2). See PGE, 317 Or. at 610, 859 P.2d 1143 (explaining method of statutory construction).
As the Tax Court observed, the phrase "functional and economic obsolescence" is not defined by statute or by the department's administrative rules. The Tax Court applied the following definition of "functional and economic obsolescence":
*320 "The common meaning of functional obsolescence is depreciation or loss in value due to changes in technology or design, improved processes, materials, and other such improvements. See Appraisal Institute, The Appraisal of Real Estate, 352-58 (10th ed 1992). Economic obsolescence or external obsolescence is loss in value due to forces from outside the property, such as neighborhood decline, market or industry changes and general economic conditions. Id. at 358-59." J.R. Simplot Co. 12 OTR at 394, 1993 WL 106053 (1993).
Neither party challenges those definitions, and nothing about them suggests that they are inaccurate. Accordingly, we apply the same definitions in our analysis of this case.
Our principal task is to determine what the legislature intended when it excluded "consideration" of functional and economic obsolescence. We typically give words of common usage their plain, natural, and ordinary meaning. PGE, 317 Or. at 611, 859 P.2d 1143. The dictionary defines "consideration" to mean either "continuous and careful thought" or "the act of regarding or weighing." Webster's Third New Int'l Dictionary, 484 (unabridged 1993). The meaning of that term is clear when we read it in the context of the other provisions of the statute. The legislature intended the term "consideration," in ORS 308.411(2), to refer to the act of weighing obsolescence in the valuation process, rather than merely thinking about obsolescence. In the context of ORS 308.411(2), excluding "consideration" of obsolescence means that the assessment may not give any weight to the subject plant's functional or economic obsolescence on the assessment dates.
With that discussion as background, we consider the differing interpretations of ORS 308.411(2) offered by the parties and the Tax Court. Taxpayer argues that the broad exclusion of "consideration" of obsolescence in that subsection is limited by the narrower wording of ORS 308.411(5). That provision prohibits an electing taxpayer from introducing "evidence relating to * * * the allowance of functional or economic obsolescence in any approach to valuation of the plant." Taxpayer argues that the term "allowance" refers to a deduction from the value of the subject property, based on the extent of the property's functional or economic obsolescence and calculated from the taxpayer's withheld income and expense information.
We find no reason, based on the statute's text and context, to read the term "allowance" so narrowly. The word "allowance" means, as pertinent, "a share or portion allotted or granted," "a fixed amount allowed," or "the taking into account of circumstances (as mitigating circumstances) or of contingencies." Webster's at 58. The term "allowance" in subsection (5) does suggest, as taxpayer maintains, that the legislature was concerned about a deduction from value based on the extent of functional or economic obsolescence in the subject property. However, nothing in the text of subsection (5), or in any of the other subsections of ORS 308.411, suggests that the legislature was concerned only with a deduction for obsolescence based on withheld income information. Subsection (5) prohibits a taxpayer from introducing any evidence relating to the "allowance" of functional or economic obsolescence, not just evidence based on a taxpayer's withheld income and expense information. Taxpayer's interpretation, in effect, would require us to insert words in the statute by construing the phrase "evidence relating to * * * the allowance" to mean only evidence of a deduction from value based on withheld income and expense information. However, when interpreting a statute, we must avoid inserting that which the legislature omitted.
"In the construction of a statute, the office of the judge is simply to ascertain and declare what is, in terms or in substance, contained therein, not to insert what has been omitted, or to omit what has been inserted[.]" ORS 174.010 (emphasis added).
Because subsection (5) is not limited in the way that taxpayer suggests, and is not otherwise ambiguous, we find nothing in taxpayer's argument regarding the term "allowance" that raises an ambiguity in the meaning of "consideration" in subsection (2). We conclude that the department may give no weight to functional or economic obsolescence *321 in appraising and valuing, under any of the approaches to valuation listed in ORS 308.411(1), an industrial plant whose owner has made an election under ORS 308.411(2).
In arguing that an election under ORS 308.411(2) precludes only calculated deductions for obsolescence based on withheld income and expense information, taxpayer relies heavily on the statute's legislative history. However, because that statute's text and context is not subject to more than one plausible reading, we do not examine legislative history. See PGE, 317 Or. at 611, 859 P.2d 1143 (courts examine legislative history only if the intent of the legislature is not clear from the text and context inquiry).
We next consider whether the Tax Court correctly decided that ORS 308.411 has the two consequences that that court described. First, we consider whether the Tax Court correctly determined that an owner's election under ORS 308.411(2) requires a valuation in excess of the subject property's "true cash value." The Tax Court arrived at that interpretation, in part, because the third sentence of ORS 308.411(9) provides that an election under subsection (2)
"shall constitute an irrevocable waiver of any subsequent claim that the failure of the assessor or the department to consider the income approach or functional or economic obsolescence resulted in a valuation in excess of the true cash value of the plant [.]" (Emphasis added.)
That provision reveals only that the legislature recognized that the valuation of the plant of an electing owner may exceed its true cash value. ORS 308.411(9) does not require, expressly or by reasonable inference, a valuation in excess of true cash value.
An election under ORS 308.411(2) may result, but need not result necessarily, in a valuation higher than true cash value for two reasons. First, an assessment under that statute must not give any weight to the plant's functional or economic obsolescence, which would otherwise reduce the plant's value in the marketplace. In its opinion on reconsideration, the Tax Court said that an election under ORS 308.411(2) requires a valuation in excess of true cash value, in part, because the market inherently considers obsolescence and, accordingly, "excluding consideration of [obsolescence] cannot result in an estimate of market value." J.R. Simplot Co., 12 OTR at 402. That may be true when the subject property contains functional or economic obsolescence. In this case, however, the Tax Court observed that "all of the parties agree that the subject is a stateof-the-art plant suffering essentially no economic or functional obsolescence[.]" Id. at 399. Because the parties agree that plant was not economically or functionally obsolete on the assessment dates, the plant contained no obsolescence for the market to consider. Accordingly, in this context, a valuation that gives no weight to obsolescence, in theory at least, should reflect the plant's true cash value.
Second, an election under ORS 308.411(2) may result in a valuation higher than true cash value because, as a consequence of an election, the department usually will not have all the information needed to assess accurately the plant's true cash value. ORS 308.411(8) relieves an electing owner of the obligation
"to make available to the assessor or department, any itemization of income and expense of the industrial plant for use in an income approach to valuation or for determination of functional or economic obsolescence in any approach to valuation in making an appraisal of an industrial plant for purposes of ad valorem taxation."
ORS 308.411(4) provides that, if an owner does not make an election under subsection (2),
"the owner shall make available to the assessor or department all information requested by the assessor or department needed to determine the true cash value for the plant."
When read together, those provisions reveal that, in most cases, an electing owner will deprive the department of important information that it needs to determine the true cash value of the plant. However, that fact does not require a valuation in excess of true cash value. Rather, subsections (4), (8), and (9) reflect a legislative recognition that an assessment based on incomplete information *322 may exceed true cash value, and that an electing owner may not complain if that consequence comes about due to the failure of the department to consider obsolescence or income information. The Tax Court erred in concluding that an election under ORS 308.411(2) requires a property valuation in excess of true cash value.
We next consider whether the Tax Court correctly determined that, by excluding "consideration" of obsolescence, the legislature intended to preclude the use of the sales comparison approach to valuation. Again, we examine the text and context of ORS 308.411(2). PGE, 317 Or. at 610, 859 P.2d 1143. ORS 308.411(2) provides that a consequence of an owner's election is to exclude "the income approach to valuation." Subsections (5), (8), and (9) also refer to exclusion of only the income approach. Nothing in the text of any of the provisions of ORS 308.411 suggests that the legislature intended that a consequence of an owner's election to withhold income and expense information is exclusion of the sales comparison approach. The Tax Court's construction appears to add to the statute an exclusion of an appraisal method that the legislature did not insert into the statutory text. In construing a statute, however, we may not insert terms that the legislature omitted. ORS 174.010.
The Tax Court concluded that an election under ORS 308.411(2) necessarily precludes use of the sales comparison method of appraisal, because "an appraiser must consider obsolescence in order to determine if the plants are comparable." J.R. Simplot Co., 12 OTR at 396 (emphasis in original). Recalling our earlier discussion of the meaning of "consideration" in subsection (2), we recognize that an appraiser must "think about" obsolescence, in order to determine if plants are comparable. However, we are not convinced that an appraiser must "give weight" to obsolescence in the subject property in order to use the sales comparison approach. In theory, an appraiser might identify a comparable sale that does not reflect obsolescence. An appraiser may use evidence of the sale of that property in appraising the subject property without giving any weight to the extent of functional or economic obsolescence in the subject property.
Even if the sale price of a comparable property does reflect obsolescence, it may be possible for an appraiser to use evidence of the comparable sale in its assessment without giving any weight to functional or economic obsolescence in the subject property. For example, in this case, the Tax Court discounted an appraisal performed by taxpayer's appraiser, Brown, in part, because Brown "was not aware of $6 million of functional obsolescence in the Boardman sale and admitted that McCain Foods and Grand Forks sales contained functional obsolescence." Id. at 400. ORS 308.411(2) does not prevent the Tax Court from determining whether Brown's appraisal can be salvaged by adding back the portion of the valuation attributable to functional or economic obsolescence in the comparable plants. By adding back the $6 million of functional obsolescence in the Boardman sale, that sale might provide evidence of the value of the subject property, without giving any weight to functional or economic obsolescence in the subject plant on the assessment date.
We recognize that it may not always be possible simply to add back the extent to which a comparable sale reflects obsolescence in order to value the subject property without giving weight to obsolescence. The parties may not be able to determine the extent to which the sale price of the comparable property reflects that property's functional or economic obsolescence, because the parties do not have access to the comparable property, or for other reasons. The point is that the statute does not exclude use of the sales comparison method of appraisal simply because the parties must think about obsolescence in order to determine whether plants are comparable. If it is possible to use evidence of comparable sales in assessing the subject property, without giving any weight to obsolescence in the subject property, an election does not preclude use of evidence of comparable sales.
We next consider the extent to which an election under ORS 308.411(2) may affect methods of valuation that rely on market information, other than the sales comparison *323 approach. The Tax Court discounted appraisals utilizing the cost-replacement approach, because those appraisals took into account estimates of depreciation that indirectly consider obsolescence in predicting the economic life of buildings and structures and of machinery and equipment. For example, the Tax Court declined to consider evidence presented by appraisers who estimated depreciation based on "normal lives," because that measure of depreciation requires the court to consider obsolescence. J.R. Simplot Co., 12 OTR at 398-99. We do not believe that, by excluding "consideration" of obsolescence, the legislature intended to preclude evidence that takes into account predictions as to when buildings and structures or equipment and machinery may become obsolete in the future. Such depreciation estimates may reflect "consideration" of obsolescence, in the sense that appraisers and the Tax Court must think about the extent to which future obsolescence may require replacement of the property's assets. However, those depreciation estimates do not necessarily give weight to the extent of present obsolescence in subject property on the assessment date.
By contrast, evidence based on a used equipment market may "give weight" to present obsolescence in the subject property. In this case, the Tax Court overruled its previous decision in Johnson v. Dept. of Rev., 10 OTR 218 (1985), in which the court concluded that ORS 308.411(2) does not preclude a taxpayer's use of a replacement cost used approach, despite the fact that the used equipment market inherently reflects functional and economic obsolescence. ORS 308.411(2) may prohibit the parties from utilizing a replacement cost used approach in that circumstance, because the used equipment market necessarily reflects the degree to which a plant owner's assets are obsolete on the assessment date, as distinct from the degree of predicted future obsolescence. Again, the point is that, once an election is made, an appraiser may not reduce the assessed value of the subject plant to reflect the degree of that property's functional or economic obsolescence on the assessment date. To the extent that it may be possible to adjust an appraisal to remove any deductions based on the subject property's functional or economic obsolescence, such adjustments are not precluded under ORS 308.411(2) simply because they require the Tax Court or the parties to "think about" obsolescence, but do not "give weight" in the valuation to obsolescence.
In sum, we conclude a taxpayer's election under ORS 308.411(2) has three consequences. First, an election precludes only the income method of appraisal. In using other valuation methods, the department may not reduce the value of the subject plant, directly or indirectly, to reflect the extent of that plant's functional or economic obsolescence on the assessment date. As a practical matter, an election may preclude use of other appraisal methods that rely on market information, but an election need not have that effect necessarily. Second, an election does not require a valuation in excess of the plant's true cash value. In practice, the valuation of an electing owner's plant may exceed the plant's true cash value, because the department does not have access to all the income and expense information that it needs to determine the true cash value, and because the valuation will not reflect the subject plant's functional or economic obsolescence on the assessment date. Third, an election prohibits the taxpayer from introducing evidence relating to obsolescence when the purpose of such evidence is to reduce the valuation of the subject property to reflect the extent of the property's functional or economic obsolescence on the assessment dates. However, an election does not prohibit the parties from introducing evidence relating to obsolescence when the purpose of such evidence is to prove that no weight was given to the subject plant's functional or economic obsolescence in arriving at a valuation.
We now turn to the appropriate disposition of this case. ORS 305.445 provides that this court may "affirm, modify or reverse the order or decision of the tax court appealed from, with or without remanding the case for further hearing, as justice may require." Our review of this case is hampered by the fact that the Tax Court evaluated *324 the competing appraisals on the basis of an erroneous interpretation of ORS 308.411. We conclude that the appropriate disposition is to remand the case to permit the Tax Court to evaluate the evidence of the subject property's value under a correct statutory interpretation. We express no opinion as to whether the appraisals of the department or the taxpayer provide the best evidence of true cash value. We leave that determination to the Tax Court in the first instance.
On appeal and cross-appeal, the judgment of the Tax Court is reversed. The case is remanded to the Tax Court for further proceedings consistent with this opinion.
NOTES
[1] Because the department performed the assessments that are at issue in this case, we refer in this opinion to the effect of ORS 308.411 on assessments by "the department." We note that ORS 308.411 also governs assessment actions by county assessors. See ORS 308.411(4) and (8) (describing the circumstances under which the owner of an industrial plant must make income and expense information available to "the assessor or department").
[2] Lamb-Weston, Inc., intervened to object to the production of financial data about its industrial plants to department and taxpayer. Lamb-Weston and taxpayer make similar arguments regarding the meaning of ORS 308.411.